IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| **TOMASA GONZALES,** | § | |
| **Plaintiff** | § | Case No.: _____ |
| v. | § | |
| **Midland Funding, LLC,** | § | |
| **Midland Credit Management Inc., &** | § | **COMPLAINT AND JURY DEMAND** |
| **Universal Surety of America** | § | |
| **Defendants** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff TOMASA GONZALES ("GONZALES") brings suit against Midland Funding, LLC ("MF") and its servicer Midland Credit Management Inc ("MCM") for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., the Texas debt collection act, Ch. 392 Tex. Fin. C., and the Fair Credit Reporting Act, 15 U.S.C. 1691 et seq., and for related claims. Suit is also brought against Universal Surety of America, the bonding company for MF and MCM.

### A.   JURISDICTION AND VENUE.

1.   The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (the "FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. 1691 et seq., ( the "FCRA").  Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law, the FDCPA and the FCRA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. The court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction, that they

1

form part of the same case or controversy under Article 3 of the United States Constitution. The Court specifically has jurisdiction over Defendant Universal Surety of America under 28 U.S.C. § 1367(a) (the federal court's "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties").

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Hidalgo County, Texas.

3. Plaintiff is an individual who resides in Hidalgo County, Texas.

4. Defendant Midland Funding LLC is a foreign corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 8875 Aero Dr., Ste. 200, San Diego, CA 92123 (San Diego County). Said Defendant may be served by and through its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5. Defendant Midland Credit Management Inc is a foreign limited liability company organized and existing under the laws of the State of Kansas, with its principal place of business at 8875 Aero Drive Suite 200, San Diego, CA 92123 (San Diego County). Said Defendant may be served by and through its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, TX 78701. Prior to January 10, 2010, MCM did not have a registered agent in Texas even though it did business in Texas.

6. Defendant Universal Surety Of America is a foreign corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 9025 North Lindbergh Dr., Peoria, IL 61615. Said Defendant may be served by and through its registered agent, Roy C.

Die, 8 East Greenway Plaza Suite 400, Houston, TX 77046.

7. Defendant Universal Surety Of America is the bonding company for Defendants Midland Funding LLC ("MF") and Midland Credit Management Inc ("MCM"). Pursuant to Tex. Fin. C. § 392.102 and pursuant to the terms of the bond agreement itself, the bonding companies are liable for the Texas debt collection act claims Plaintiff may bring against the debt collectors for whom they provide a bond. Therefore, when this suit refers to the liability of Defendants MF and MCM for violations of the Texas debt collection act, those claims apply equally to their respective bonding companies, up to $10,000.

8. The Court has jurisdiction over all Defendants: the nonresident debt collectors (MF and MCM) and the nonresident bonding company (Universal Surety). Defendant debt collectors have purposefully availed themselves of the privileges and benefits of conducting business in Texas by engaging in business in Texas. Said Defendants engaged in business in Texas by attempting to collect an alleged debt against Plaintiff in Texas in a manner that violated the FDCPA and that forms the basis of the other claims brought by way of this complaint. The bonding companies engaged in business in Texas by providing a bond to the Defendant debt collectors in favor of consumers harmed by the debt collectors' violations of the Texas debt collection practices act.

9. All conditions precedent necessary to maintain this action have been performed or have occurred.

### B.   STATEMENT OF FACTS

10. On or about April 28, 2008, Defendant Midland Funding LLC ("MF") filed a collections lawsuit against Plaintiff Tomasa Gonzales in Cause No. C-05-08-21. <u>Midland Funding LLC v.</u>

Tomasa Gonzales, Justice Court, Precinct 2, Place 1, Hidalgo County, Texas ("the state court action"). In support of its lawsuit, MF attached an affidavit of Judy Richter of Midland Credit Management Inc ("MCM") which stated the following:

> I am employed by Midland Credit Management, Inc., servicer of this account on behalf of plaintiff [Midland Funding, LLC], who is the current owner of, and/or successor to, the obligation sued upon. Plaintiff's predecessor in interest sold and assigned all right, title and interest in the defendant's ASPIRE VISA account number 479107011E6S794 (Midland Credit Management, Inc. account number 8511255100) to the plaintiff.

11. Therefore, according to affidavit attached in the state court lawsuit, MCM is the servicer of MF, the purported owner of an Aspire Visa account. As such, MF is liable for the debt collection violations of MCM, its servicer and agent, in attempting to collect on the alleged debt. Therefore, the liability of MCM applies equally to MF (and visa versa) as MF was acting through MCM.

12. On August 28, 2008, the judge in the state court action signed an agreed final judgment that MF "take nothing by way of its suit against" Gonzales. This extinguished the purported Aspire Visa debt.

13. Despite the agreed adjudication that the debt was extinguished, MF, through its agent and servicer MCM, continued to report the Aspire Visa account on the Experian, TransUnion and Equifax credit reports of Gonzales, and to do so within one year of the filing of this lawsuit. This reporting was done in March 2010 on all three reports and, on information and belief, each month for several months thereafter. (The entity listed on the credit reports is MCM, not MF, but as the affidavit in the collections lawsuit stated, MCM is servicing the debt on behalf of MF, the owner of the debt).

14. For example, in March, 2010 and, on information and belief, in months thereafter, MF,

through its agent and servicer MCM, reported on Gonzales' TransUnion credit report that she owed a balance of $7,396 on the Aspire Visa account.

15. Putting aside that the extinguished debt should not have been reported at all, the amount actually reported was inflated even if the debt were still owed, according to the affidavit attached to the state court collections lawsuit. In the affidavit, MCM, on behalf of MF, averred that Gonzales "owed a balance of $4,172.20 on 2008-03-20; and that such balance will continue to earn interest at a rate of 0.00% as an annual percentage rate…" Despite a zero percent interest rate on a debt of $4,172.20, MF, through MCM, reported the debt was $7,396 on the March 2010 credit reports, and, on information and belief, reported and inflated amount each month for several months thereafter.

16. On information and belief, the amount reported as due on Plaintiff's credit reports included filing fees and other court costs and expenses in the underlying action, despite the fact that the state court ruled in Plaintiff's favor.

17. In spite of knowing the debt was extinguished, MF, through its agent and servicer MCM, repeatedly pulled Gonzales' credit reports within four years and within one your of the filing of this lawsuit. For example, MF, through its agent and servicer MCM, pulled Gonzales' TransUnion credit report in November 2009 and again in February 2010.

18. To the degree MF failed to disclose to its servicer and agent MCM that the alleged debt was extinguished, it did so knowing that MCM would continue to attempt to collect the debt by reporting the debt on Plaintiff's credit reports, by pulling Plaintiff's credit reports, by forwarding the debt to yet other servicers to attempt to collect the extinguished debt, and by taking other

steps to attempt to collect the debt.

19. For example, within one year of the filing of this lawsuit but before March 10, 2010, MF and/or MCM forwarded the extinguished debt to the debt collection law firm Rausch, Strum, Israel, Enerson & Hormik, LLC ("Rausch") to attempt to collect. On or about March 10, 2010, Rausch sent a letter on behalf of MF seeking to collect the extinguished debt. On information and belief, when MF and/or MCM forwarded the account to Rausch, they withheld knowledge from Rauch that the debt was disputed and, more over, that the debt was extinguished. MF and/or MCM withheld this information from Rausch for the purpose of providing a veil of plausible deniability for Rausch's attempts a debt that was extinguished.

20. On or about September 7, 2010, MF and MCM received directly from Plaintiff a letter stating that she did not owe the extinguished debt. The letter attached a copy of the final judgment extinguishing the debt. At no point thereafter has MF or MCM provided a written statement to Plaintiff admitting or denying the inaccuracy, or stating that they have not had sufficient time to complete an investigation of the inaccuracy.

21. The actions of Defendants MF and MCM have inflicted damages upon Plaintiff. The peace of mind that Plaintiff had previously had that the debt had finally been extinguished as a result of ruling of the take nothing judgment of the state court judge has been shattered, causing Plaintiff emotional distress. The impermissible pulling of Plaintiff's credit reports invaded her privacy, illegally disclosing her most private personal financial information such as her social security number, her date of birth, her employment history, her current and all former addresses, the names and account numbers of her current and former creditors, and a history of any accounts she may have not been able to pay in the past for any month in the prior 7 years. It is

embarrassing to disclose to strangers with no permissible purpose each time the circumstances in her life may have put Plaintiff in a position where she was not able to meet her financial obligations to others. Further, it is common knowledge that each time a consumers credit report is pulled, her credit score is adversely affected. The impermissible pull will be reflected on Plaintiff's credit reports for 3 years. The false credit reporting that Plaintiff owed the debt that was extinguished, and owed it at a substantially inflated amount, also adversely Plaintiff's credit reputation. The impermissible pulls and false reporting made it more difficult for Plaintiff to obtain credit, maintain credit, or receive offers of credit on terms as favorable as they would be without Defendants' unlawful actions, and reasonably discouraged Plaintiff from seeking credit.

## COUNT # 1: Violations of the federal Fair Debt Collection Practices Act.

22.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

23.   The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope"). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5,

("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

24.     Plaintiff brings these FDCPA claims as a "private attorney general" acting in the interest of all consumers. See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); see also Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

25.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a debt.

26.     The obligation alleged by Defendants MF and MCM in the underlying action and on Plaintiff's credit report is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for personal, family, or household purposes.

27.     Defendants MF and MCM are each independently a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6). Each acquired the putative debt after it was in default with the original creditor. The principal purpose of each defendant is to collect putative debts, and each regularly attempts to collect putative debts. For example, MF purchases hundreds of thousands of debts after they are in default with the original creditor; files thousands of collections lawsuits under its own name; sends thousands of collection letters seeking to collect alleged debts,

directly or through others; and reports alleged debts to the credit reporting agencies, either directly or through others such as its servicer MCM. In turn, MCM collects thousands of debts for MF by reporting debts allegedly owed to MF on the credit reports of thousands of consumers, by filing affidavits in collection suits filed under the name of MF, and by taking other acts to "service" the debts of MF.

28. Defendants MF and MCM's litigation in the underlying action, their subsequent credit reporting, credit pulls, and forwarding of the account on the extinguished debt to other servicers such as Rausch constituted, and other actions, were an attempt to collect a debt, or were made in connection with an attempt to collect a debt, within the meaning of the FDCPA.

29. MF and MCM violated the following sections of the FDCPA: 15 U.S.C. 1692d, 1692e and 1692f. By way of example and not limitation, MF and MCM violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with attempting to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, status, or legal status of the debt; misrepresenting the compensation which may be received for the collection of a debt; threatening to take and actually taking an action prohibited by law; communicating to any person credit information that is known to be or which should be known to be false, including the failure to communicate that a disputed debt is disputed; using false representations or deceptive means; using unfair or unconscionable means; and attempting to collect any amount which is not expressly authorized by contract or by law.

30. A prevailing Plaintiff in an FDCPA action is entitled to actual damages, additional statutory damages of $1,000.00, and mandatory attorney's fees and costs, and these are so

sought.

## COUNT # 2: Violations of the Texas debt collection statute, Tex. Fin. C. § 392.001 *et seq*

31.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

32.     Plaintiff is a "consumer" as that term is defined Tex. Fin. C. § 392.001(1) because she was alleged to owe a debt.

33.     Defendants MF and MCM are each a "debt collector" and a "third-party debt collector" as those terms are defined in Tex. Fin. C. § 392.001(6) and (7) for the same reasons they are a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6).

34.     The obligation alleged by Defendants MF and MCM to be owed by Plaintiff is a "consumer debt" as that term is defined in Tex. Fin. C. § 392.001(2) because the debt was incurred primarily for personal, family, or household purposes.

35.     Defendant Universal Surety of America is the bonding company for Defendants MF and MCM. Defendant Universal Surety is liable therefore for the Texas debt collection claims Plaintiff can bring against Defendants MF and MCM pursuant to Tex. Fin. C. § 392.102 and pursuant to the terms of the bond agreement itself.

36.     Defendants MF and MCM violated Tex. Fin. C. § 392.001 et seq., the Texas debt collection act. By way of example and not limitation, in connection with an attempt to collect a consumer debt Defendants violated the act by: misrepresenting the character, status, and amount

of the debt; making fraudulent, deceptive, or misleading representations; using an unfair or unconscionable means to collect a debt; using threats, coercion or attempts to coerce; threatening to take and actually taking an act prohibited by law; oppressing, harassing, or abusing a person; collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer; representing or threatening to represent to any person other than the consumer that a consumer is willfully refusing to pay a non-disputed consumer debt when the debt is in dispute and the consumer has notified, in writing the debt collector of the dispute; failing to correct their collection files and take the other steps required by Tex. Fin. C. § 392.201 *et seq* when receiving a written dispute.

37. A prevailing consumer in a Texas debt collection action is entitled to actual damages, additional statutory damages of *no less than* $100.00 *per violation*, and mandatory attorney's fees and cost, and these are so sought.

38. Plaintiff also seeks an injunction to prevent or restrain debt collection violations, now and in the future. Tex. Fin. C. § 392.403(a)(1).

### COUNT #3: Providing false credit information in violation of Tex. Fin. C. § 391.001 et seq.

39. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

40. Defendants MF and MCM violated Tex. Fin. C. § 391.001 *et seq* by furnishing false credit information. Defendants MF and MCM furnished false information about Plaintiff's

creditworthiness, credit standing, or credit capacity to a credit reporting agency in violation of Tex. Fin. C. § 391.002. Defendants MF and MCM are liable for statutory damages of $200.00 per violation, actual damages, exemplary and punitive damages, and attorney's fees and costs for its actions.

**COUNT #4: Violation of the Fair Credit Reporting Act.**

41.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein. The commonly used term "credit reporting agencies" is used interchangeably with the technical definition of that same term used by the FCRA, "consumer reporting agencies."

42.   Plaintiff is a "consumer," as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c) because she is an individual.

43.   MF and MCM are each a "person" as defined by the FCRA, USC § 1681a(b).

44.   MF, through its agent and servicer MCM, obtained information regarding plaintiff from a "consumer reporting agency," as defined by the FCRA, 15 USC § 1681a(f). A "consumer reporting agency" is commonly known as a "credit reporting agency" (this complaint will use the terms interchangeably) and includes, without limitation, such companies as Experian, Equifax, and TransUnion.

45.   MF, through its agent and servicer MCM, obtained documents (whether in written or electronic form) from one or more credit reporting agencies regarding Plaintiff, and said documents are "consumer report[s]," as defined by the FCRA, 15 USC § 1681a(d). A "consumer

12

report" is commonly known as a "credit report," and this complaint will use the terms interchangeably.

46.     MF, through its agent and servicer MCM, requested, obtained, used and/or disseminated the consumer reports of plaintiff, or information contained therein, without any of the permissible purposes or uses enumerated in the FCRA, 15 USC § 1681b(a).

47.     The actions of MF and MCM were intentional and willful. Pursuant to 15 USC § 1681n and 1691q, any natural person who willfully fails to comply with any of its requirements under the FCRA, including the limitations on accessing a consumer report, or who knowingly and willfully obtains a consumer report without a permissible purpose and under false pretenses, is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure or $1,000.00, whichever is greater; (ii) such amount of punitive damages as the court may allow; and (iii) in the case of any successful action to enforce any liability under 15 USC § 1681n, the costs of the action together with reasonable attorneys' fees. As a result of their request and receipt of a consumer report under false pretenses or knowingly without a permissible purpose, MF and MCM are liable to the Plaintiff in an amount equal to the sum of (i) any actual damages sustained by the Plaintiff as a result of the failure or $1,000.00, whichever is greater; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees. As a result of MF's and MCM's knowing and willful request and receipt of information regarding the Plaintiff from a consumer reporting agency under false pretenses, MF and MCM are liable to the Plaintiff in an amount equal to the sum of (i) any actual damages sustained by the Plaintiff as a result of the

failure or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

48. In the alternative, MF's and MCM's actions were negligent. Pursuant to 15 USC § 1681o, any person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure and (ii) in the case of any successful action to enforce any liability under 15 USC § 1681o, the costs of the action together with reasonable attorneys' fees. As a result of MF's and MCM's negligent failure to comply with the FCRA, MF and MCM are liable to the Plaintiff in an amount equal to the sum of (i) any actual damages sustained by the plaintiff as a result of said failure and (ii) the costs of this action together with reasonable attorneys' fees.

## C. JURY DEMAND.

49. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## D. PRAYER

50. For these reasons, Plaintiff asks for judgment against Defendant for the following:

> i. The above referenced relief requested;
>
> ii. Statutory damages, including $1,000.00 pursuant to 15 U.S.C. § 1692k (FDCPA) and no less than $100 per violation pursuant to Tex. Fin. C. § 392.403(e) (Texas debt collection act).
>
> iii. Actual, economic, punitive and exemplary damages within the

14

        jurisdictional limits of the court;

iv. Attorneys fees and costs;

v. Prejudgment and post-judgment interest as allowed by law;

vi. Costs of court;

vii. General relief;

viii. An injunction preventing Defendants from engaging in similar unlawful conduct now and in the future;

ix. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

        Respectfully submitted,
/s/
Ahmad Keshavarz
ATTORNEY IN CHARGE FOR PLAINTIFF
State of Texas Bar Number: 24012957

The Law Offices of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026

Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@AustinConsumerAttorney.com

TEXAS RIO GRANDE LEGAL AID, INC.
By: Carla Leticia Sánchez
4920 N. IH-35
Austin, Texas 78751
Phone: (512) 374-2763
Fax: (512) 447-3940
Email: csanchez@trla.org
State of Texas Bar Number: 24070552
Southern District of Texas Bar Admission Number: 1101245
*ATTORNEY TO BE NOTICED*